IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| H AND M SERVICES, LLC, | : | |
| | : | Case No. 2:23-cv-02822 |
| **Plaintiff,** | : | |
| | : | Judge Algenon L. Marbley |
| v. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| ALLIANCE INVENTORY SERVICE, LLC | : | |
| *et al.,* | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendants Alliance Inventory Service, LLC ("Alliance Ohio"), Alliance Inventory, LLC ("Alliance Florida"), and Douglas Driscoll (collectively the "Alliance Defendants") Motion for Summary Judgment (the "Motion"). (ECF No. 49). For the reasons set forth below, the Motion is **DENIED**.

### I.  BACKGROUND

Plaintiff is in the grocery and convenience store inventory business. (ECF No. 1 ¶ 17). Plaintiff alleges that Defendant Doug Driscoll, along with Defendant Joe Keener and Former Defendants Geary Brewer and Steve Miller were Plaintiff's employees in 2022 and 2023. (ECF No. 55 at 2). Plaintiff's employee restricts employees from competing against Plaintiff during their employment; soliciting or being hired by any of Plaintiff's customers for two years after their employment; soliciting or having any of Plaintiff's customers limit, reduce, or deny inventory work to Plaintiff; using Plaintiff's data other than for Plaintiff's benefit until five years after their employment; and using their positions with Plaintiff's customers for their own benefit. (*Id.*; ECF No. 1 ¶ 20).

1

In September 2022, Driscoll and Brewer formed Alliance Ohio, a business that, like Plaintiff, involves grocery inventory services. (ECF No. 49 at 4). In October 2022, Keener approached Driscoll about an opportunity to provide services to Sunshine Group d/b/a Save-A-Lot. (*Id*.). To service Save-A-Lot and other customers, Alliance Ohio hired employees in January 2023. (*Id*. at 5). These new employees included Plaintiff's employees, Miller and Keener. (*Id*.). After continuing services for a few months, Driscoll was contacted by Plaintiff's CEO, Barry Hoffman, regarding the services provided by Alliance Ohio to Save-A-Lot. (*Id*.). Driscoll and Alliance Ohio were accused of engaging in tortious interference, unfair competition, and use of confidential trade secret information. (*Id*.). These allegations prompted settlement negotiations between Alliance Ohio, Driscoll, and Plaintiff. (*Id*.).

On or about June 14, 2023, Driscoll, Alliance Ohio and Plaintiff entered into a settlement agreement (the "Settlement Agreement"). (ECF No. 1-3). Plaintiff's outside counsel drafted the agreement and asserted that the "terms were negotiated at arms-length." (ECF Nos. 51-1 ¶ 14; 55-3 ¶4). The agreement is a one-page document titled "Settlement Agreement And Release of All Claims" and provides, in relevant part:

> It is understood amongst the Parties that Alliance has engaged in tortious interference, unfair competition, and use of confidential trade secret information in offering Inventory Services to approximately 30 Sunshine Group dba Save-A-Lot stores ("Customer"). The Parties agree that a portion of the revenue from the Services is payable to H&M and therefor Alliance agrees to pay H&M one-half (50%) of the gross revenue from the Services performed June 12-25, 2023, and cease all commercial solicitation with the Customer after the time of Services. Alliance will make a good faith attempt to transition Customer account to H&M. Alliance will provide a copy of all Customer billing and will remit immediately following receipt from the Customer.
>
> Alliance further agrees that it will not solicit any employee of H&M to sever their employment with H&M, nor solicit or seek to solicit a customer of H&M to do business with anyone else or to discontinue, reduce or alter its relationship with H&M. Alliance agrees to discontinue activities which are likely to interfere with H&M business.

2

> The Parties agree that no further obligation exists and Alliance, its owners, officers, and employees, are released from any further liability.

(ECF No. 1-3). The Settlement Agreement recognized that Alliance engaged in tortious interference, unfair competition, and use of confidential trade secret information when working with Save-A-Lot. (*Id.*). Nonetheless, Defendants provided an affidavit by Driscoll indicating Driscoll has disputed, and continues to dispute, any wrongdoing in relation to Save-A-Lot. (ECF No. 51-1 ¶ 12). Drisocll maintains that the work was referred to Alliance Ohio by Plaintiff's employee, Keener, without Driscoll's solicitation. (*Id.*).

As required by the Settlement Agreement, Alliance Ohio ceased providing services to Save-A-Lot on June 25, 2023, made the contemplated payment, and worked with Plaintiff to transition its Save-A-Lot account to Plaintiff. (ECF No. 49 at 6; ECF No. 51-1 ¶ 14). Defendants allege the financial implications resulted in Driscoll terminating all of the Alliance Ohio employees. (ECF No. 51-1 ¶¶ 15, 16). According to Driscoll, Keener maintained access to Alliance Ohio's email domain; thus, Driscoll ceased having access to the email account and certain business files upon Keener's termination. (*Id.* ¶ 15). By mid-July 2023, Alliance Ohio's operations were finished and documentation to close the entity was submitted on October 4, 2023. (*Id.*). In July 2023, around the time Alliance Ohio's operations were ending, Driscoll formed Alliance Florida and is its sole employee. (*Id.* ¶ 17). Driscoll claims he never conducted business through Alliance Florida. (*Id.* ¶ 18).

In August 2023, Plaintiff filed a Complaint alleging breach of contract, tortious interference, misappropriation of trade secrets and confidential information, accounting, unfair competition, civil theft, injury due to criminal act, breach of fiduciary duty, civil conspiracy, and racketeering. (ECF No. 1). Specifically relevant here, Plaintiff alleged that the Alliance Defendants

3

violated the Settlement Agreement by competing against Plaintiff, soliciting Plaintiff's customers, and using Plaintiff's data. (*Id*. ¶ 22). Plaintiff's Complaint noted that the Settlement Agreement settled actions up to June 14, 2023 regarding Save-A-Lot and excluded those claims from this case. (*Id*.). As to the other claims regarding the Settlement Agreement, Plaintiff explained that at the time of entering this Settlement Agreement, Plaintiff was only aware of Alliance Defendants' conduct with Save-A-Lot. (ECF No. 55 at 3). Based on documents produced by Alliance Defendants and a confession by Miller in January 2024, Plaintiff became aware of additional customers being diverted from Plaintiff to Alliance Defendants between 2022 and 2023. (ECF No. 55 at 6). In a Declaration, Miller indicated that he was personally involved with the customers, which included Save-A-Lot, Triumph Energy, SuperSavers, and Davis Foodtown. (ECF No. 56). Additionally, at the time of the Settlement Agreement, Plaintiff was unaware that Keener and Miller were performing services for Alliance Defendants while being paid by Plaintiff. (ECF No. 55 at 2–3).

On June 20, 2024, Alliance Defendants moved for summary judgment, arguing that the Settlement Agreement included a release of the claims brought in this case rather than only claims regarding Save-A-Lot. (ECF No. 49). They also argued Plaintiff has no evidence that Alliance Defendants violated the Settlement Agreement (*Id*. at 14-15). On July 22, 2024, Plaintiff filed a Brief in Opposition (the "Opposition") and requested this Court stay its decision on post-June 14, 2023, conduct (post-Settlement Agreement conduct) because Defendants have not been deposed and the discovery cutoff was not until September 30, 2024. (ECF No. 55 at 10). Defendants have filed their Reply Brief but also filed a Motion to Strike Plaintiff's Opposition as untimely. (ECF Nos. 57, 61).

4

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Evidence that is "merely colorable" or "not significantly probative" will not defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment has the initial burden of presenting the Court with law and argument in support of its motion, as well as "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Even so, "[t]he mere existence of a scintilla of evidence to support [the nonmovant's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

### III. LAW AND ANALYSIS

#### A. Motion to Strike

Prior to reaching the substantive arguments raised in Alliance Defendants' motion for summary judgment, this Court will first address Alliance Defendants' motion to strike. *See Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005). Alliance Defendants assert Plaintiff's Opposition should be stricken because Plaintiff failed to comply with Local Rule 7.2(a)(2) by filing their Opposition eleven (11) days after the deadline to respond to the Motion for Summary Judgment. (ECF No. 57). Local Rule 7.2(a)(2) provides that any memorandum in opposition must be filed within twenty-one (21) of service of the motion. Failure to timely file an opposition may result in granting the motion provided it does not directly result in an entry of final judgment.

While the local rules provide for deadlines, opportunities for an extension to file pleadings are provided in Federal Rule of Civil Procedure 6(b)(1)(B). Under Rule 6(b)(1)(B), a court may, for good cause, extend the time for motion made after the time has expired if the party failed to file due to excusable neglect. When determining excusable neglect and whether to extend the time for filing, courts consider: (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

Alliance Defendants argue that Plaintiff's untimely filing was without excuse for the delay, thus, Defendants urge this Court to strike the opposition. In support of its Motion to Strike,

Defendants rely on *Pres. Partners, Inc. v. Sawmill Park Properties, LLC*, No. 2:22-CV-477, 2024 WL 469318 (S.D. Ohio Feb. 7, 2024). In *Pres. Partners*, the defendant was a few days late in filing a response to the plaintiff's motion for summary judgment. The court struck the defendant's motion for summary judgment, motion for sanctions, and associated briefing. *Pres. Partners*, 2024 WL 469318, at *2. The court found the reason for the delay and whether the delay was in the party's control weighed heavily against the party missing the deadline when the party's excuse was "mis-calendaring" the deadline. *Id.*, at *1. There was no showing of bad faith, the delay was very short, and the other party suffered minimal prejudice from the delay. *Id*. Even so, the court noted that the late filing was not the only example of disregarding the courts orders and found that "[a]lthough three factors slightly favor Defendant, the 'reason for the delay' factor is the most important factor." *Id*.

Plaintiff's untimely filing is unlike the circumstances in *Pres. Partners, Inc*. Here, Plaintiff did not show a disregard for this Courts standing orders. Indeed, Plaintiff does not offer any excuse for the delay and has simply provided that it erroneously, but innocently, filed a tardy opposition. (ECF No. 59). This is effectively an "omissions caused by carelessness." *Bickel v. Delaware Air Nat'l Guard*, No. 2:18-CV-00119, 2022 WL 899703, at *2–3 (S.D. Ohio Mar. 28, 2022) (citing *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 388 (1993)). Nonetheless, there was no showing of bad faith, the delay was only eleven (11) days, and there is no showing of prejudice against Defendants. Moreover, a "strong preference" for resolving cases on the merits is consistently articulated in the Sixth Circuit. *See Shepard Claims Service v. William Darrah & Associates*, 796 F.2d 190, 193 (1986); *Khamisi v. Neil*, No. 1:20-CV-286, 2021 WL 3634742, at *2 (S.D. Ohio Aug. 17, 2021). As such, it is appropriate to consider Plaintiff's untimely filing in resolving the Motion for Summary Judgment.

Accordingly, Defendants' Motion to Strike (ECF No. 57) is **DENIED**. Plaintiff's Motion for Extension of Time and For Leave to File Instanter is **GRANTED.** (ECF No. 59). This Court will consider Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

### B. Motion for Summary Judgment

*1. Conduct before the Settlement Agreement (Pre-June 14, 2023)*

Alliance Defendants assert that it is entitled to summary judgment, as evidenced by the language in the Settlement Agreement, because Plaintiff negotiated and agreed to a broad release of "any claims" related to "tortious interference, unfair competition, and use of confidential trade secret information in offering Inventory Services." (ECF No. 49 at 12). Alliance Defendants also state that this release is "related to any known or unknown claims it had regarding the Alliance Parties' and Mr. Driscoll's conduct prior to executing the Settlement Agreement." (*Id.*). To the extent this Court finds the terms ambiguous, Alliance Defendants argue this Court must construe the language against Plaintiff as the drafters. (*Id.*). Plaintiff responds that release was only based on claims related to "Sunshine Group dba Save-A-Lot stores," not any customers Plaintiff was unaware of at the time and any ambiguities are for the fact finder. (ECF No. 54 at 9; ECF No. 1-3). The Settlement Agreement at issue includes a release for a cause of action which "is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Hill v. McCrabb*, 19 F. App'x 314, 315 (6th Cir. 2001) (quoting *Haller v. Borror Corp.,* 50 Ohio St.3d 10, 552 N.E.2d 207, 210 (Ohio 1990)).

Under Ohio law, courts apply general contract principles to releases. *Wheel Specialties, Ltd. v. Starr Wheel Grp., Inc.*, 530 F. App'x 491, 494 (6th Cir. 2013); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 734 (S.D. Ohio 2009) (citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982)). The court's role in interpreting contracts is to ascertain the intent

8

of the parties. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). If a contract is clear and unambiguous, then its interpretation is a matter of law. *Id*. A contract is unambiguous if it can be given a definite legal meaning. *United States v. Ohio*, 787 F.3d 350, 353 (6th Cir. 2015) (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261 (2003)). In determining whether a contract is unambiguous, courts must construe the contract as a whole rather than as detached parts. *See Savedoff*, 524 F.3d at 763 (quoting *Tri–State Group, Inc. v. Ohio Edison Co.,* 151 Ohio App.3d 1, 782 N.E.2d 1240, 1246 (2002)). Courts also generally give words and phrases their plain, ordinary, or common meaning. *Brown v. Columbus All-Breed Training Club*, 152 Ohio App.3d 567, 2003-Ohio-2057, 789 N.E.2d 648, ¶ 18 (10th Dist.). If, however, the contract "is reasonably susceptible of more than one interpretation, the meaning of ambiguous language is a question of fact" to be determined by a jury. *Id*. Thus, whether a contract is ambiguous is a question of law, but the resolution of an ambiguous term in a contract is a question of fact. *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, 176 Ohio St. 3d 505, 511, 248 N.E.3d 196, 203, *reconsideration denied*, 2024-Ohio-2718, 174 Ohio St. 3d 1551, 238 N.E.3d 127.

The arguments presented by Plaintiff and Alliance Defendants demonstrate that the release is reasonably susceptible of more than one interpretation. The release simply states: "[t]he Parties agree that no further obligation exists and Alliance, its owners, officers, and employees, are released from any further liability." (ECF No. 1-3). Read alone, this release is broad. The single sentence provides that "no further obligation exists" and Alliance Defendants are "released from any further liability." (ECF No. 1-3). This supports Alliance Defendants' interpretation that this release is from any and all claims, then known or unknown. (ECF No. 49 at 3). Nonetheless, "that general language cannot properly be read in isolation, but must be read in the context of the entire 'release.'" *Brown*, 2003-Ohio-2057, ¶ 19, 152 Ohio App. 3d at 573, 789 N.E.2d at 653 (quoting

9

*Youngstown State Univ. Assn. of Classified Emp. v. Youngstown State Univ.* (1994), 99 Ohio App.3d 199, 201–202, 650 N.E.2d 167)). For example, in *Brown*, the court considered whether language could be interpreted as releasing a party of claims related to one category of claims, or both categories of claims discussed in the release. *Id*. The court noted the contract language read in isolation would involve a general release of any negligence or carelessness act. *Id*. When reading it in the context of the contract, however, it became unclear whether the release was intended to be broad or limited to one of the two types of the enumerated categories in the contract. *Id*. The court found this issue to be a question of fact and concluded that the movant was not entitled to summary judgment. *Id*.

Like in *Brown*, reading the release in context of the entire agreement reveals two reasonable interpretations. Turning first to Plaintiff's interpretation that the release is limited to Save-A-Lot, the second paragraph of the Settlement Agreement is significant. Alliance Defendants seem to accept this concept of reading the release sentence in the context the second paragraph of the Settlement Agreement because the Alliance Defendants recognizes the releasee is for "'tortious interference, unfair competition, and use of confidential trade secret information' in offering '[i]nventory [s]ervices.'" (ECF No. 49 at 12 (quoting ECF No. 1-3)). Also included in the second paragraph (and conveniently ignored by Alliance Defendants) is that the "tortious interference, unfair competition, and use of confidential trade secret information" was in relation to "approximately 30 Sunshine Group dba Save-A-Lot stores ("Customer")." (ECF No. 1-3). Moreover, the obligations to pay and to cease current operations was limited to Save-A-Lot. With this context, it is reasonable to interpret the release limited to the customer Save-A-Lot.

10

Next, focusing on the Alliance Defendants' broad interpretation, the third paragraph provides relevant context:

> Alliance further agrees that it will not solicit any employee of H&M to sever their employment with H&M, nor solicit or seek to solicit a customer of H&M to do business with anyone else or to discontinue, reduce or alter its relationship with H&M. Alliance agrees to discontinue activities which are likely to interfere with H&M business.

(ECF No. 1-3). While the second paragraph references a single customer, Save-A-Lot, this third paragraph extends beyond Save-A-Lot and controls the activity of Alliance towards "a customer of" Plaintiff. It follows that the fourth paragraph, the release, is also broad and goes beyond the relationship with Save-A-Lot.

Based on these two reasonable interpretations of the release, the language is ambiguous and there remains a question of fact: whether this release is intended to be broad or is limited to claims related to Save-A-Lot. Alliance Defendants insist that, even if this Court finds the release ambiguous, this Court should construe the ambiguity against Plaintiff. (ECF No. 49 at 12). In other words, this Court should adopt Alliance Defendants' reasonable interpretation that the Settlement Agreement intends to release the Alliance Defendants from liability related to any conduct that occurred prior to June 14, 2023. (*Id.*). Alliance Defendants rely on *Geo Vantage of Ohio, LLC v. GeoVantage, Inc.*, No. 2:05-CV-1145, 2006 WL 2583379, at *7 (S.D. Ohio Sept. 6, 2006), which holds that "[a]mbiguous provisions in a contract traditionally are construed against the drafter, and the ambiguous term is held to any reasonable interpretation attributed to that term by the opposing party." The court in *Geo Vantage*, however, applied Massachusetts law.

Under Ohio law, it is generally the role of the fact finder to resolve an ambiguity. *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 13, 100 Ohio St. 3d 216, 220, 797 N.E.2d 1256, 1262 (citing *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144). Indeed, there are some

11

Case: 2:23-cv-02822-ALM-CMV Doc #: 83 Filed: 03/19/25 Page: 12 of 16 PAGEID #: 627

instances under Ohio law where an ambiguity is interpreted against the drafter, particularly when interpreting insurance contracts or where the contract is standardized and between parties of unequal bargaining power. *Westfield Ins. Co.*, 2003-Ohio-5849, ¶ 13, 100 Ohio St. 3d at 220, 797 N.E.2d at 1262. This is inapplicable here.

Where a contract is ambiguous, extrinsic evidence may be considered to ascertain the parties' intent. *Shifrin v. Forest City Enterprises, Inc.* (1992), 64 Ohio St.3d 635, 597 N.E.2d 499. Even so, resolving the meaning of ambiguous terms is for the fact finder and "the purpose of summary judgment is 'not to try issues of fact, but rather to determine whether triable issues of fact exist.'" *Tera, L.L.C.*, 2024-Ohio-1945, 176 Ohio St. 3d at 511, 248 N.E.3d at 203 (quoting *Smathers v. Glass*, 172 Ohio St.3d 84, 2022-Ohio-4595, 222 N.E.3d 554, ¶ 3). While considering summary judgment, this Court must "construe the evidence in favor of the nonmoving party, including when drawing inferences from facts or resolving factual ambiguities or inconsistencies." *Id*.

Here, viewing the limited evidence provided in a light most favorable to Plaintiff, there is a genuine issue of material fact whether the release only pertains to conduct related to Save-A-Lot. Driscoll's affidavit indicates that the Settlement Agreement provided a broad release in exchange for which Alliance Ohio paid Plaintiff 50% of the gross revenue from the services performed during the June 2023 round of inventories, and ceased servicing Save-A-Lot stores after June 25, 2023 (ECF No. 51-1¶ 13). On the other hand, Plaintiff's indication of being unaware of any additional customers or violations makes it unlikely Plaintiff intended to release those claims. This is especially true when, as Plaintiff argues, the facts of such additional claims were denied and concealed. (ECF Nos. 55-1 ¶6; 55-2 ¶4). There exists an issue off act regarding the parties' intended scope of this release. *See, e.g.*, *Tera, L.L.C.*, 2024-Ohio-1945, 176 Ohio St. 3d at 512,

248 N.E.3d at 204 (finding a genuine issue of material fact existed when conflicting extrinsic evidence was offered for an ambiguous contract and "[t]o determine from all of that information the definitive legal meaning that the parties intended . . . would require this court to step into the role of fact-finder and weigh the credibility of the witnesses and draw inferences from the evidence.").

Because there remains a genuine issue of material fact as to whether the release was intended to be general or limited to one customer, granting summary judgment is inappropriate. As such, the Motion is **DENIED** with respect to liability related to conduct that occurred prior to June 14, 2023. (ECF No. 49 at 13).

*2. Conduct after the Settlement Agreement (Post-June 14, 2023)*

Alliance Defendants argue that Plaintiff has no evidence the Settlement Agreement was violated, thus, Alliance Defendants are entitled to summary judgment. (ECF No. 49 at 14). Alliance Defendants explain that Plaintiff failed "to identify or produce a single piece of evidence or testimony that demonstrates that the Alliance Parties or Mr. Driscoll have engaged in any conduct that is prohibited by the Settlement Agreement." (ECF No. 49 at 14). To support this, Alliance Defendants provided an affidavit by Mr. Driscoll explaining that he has "never conducted business through Alliance Ohio that would violate the settlement agreement." (ECF Nos. 49 at 14; 51-1 ¶ 19). Plaintiff responds with a Rule 56(d) motion, requesting this Court stay its decision on whether Defendants are entitled to summary judgment on post-June 14, 2023, conduct until after the discovery cutoff.

Under Rule 56(d) of the Federal Rules of Civil Procedure, if a nonmovant shows by affidavit that it cannot present facts for its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

issue any other appropriate order. Fed. R. Civ. P. 56(d). The rule is intended "to give effect to the well-established principle that the plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment." *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-CV-1285, 2012 WL 1340369, at *2 (S.D. Ohio April 17, 2012) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009)). "Likewise, it is improper to grant summary judgment if [the party seeking Rule 56(d) relief] is given an insufficient opportunity for discovery." *Dish Network LLC v. Fun Dish Inc.*, No. 1:08-CV-1540, 2011 WL 13130841, at *3 (N.D. Ohio Aug. 12, 2011) (citing *White's Landing Fisheries, Inc. v. Bucholzer*, 29 F.3d 229, 231–232 (6th Cir. 1994) ).

When making the Rule 56(d) motion, the affidavit or declaration provided must "indicate to the district court [the party's] need for discovery, what material facts [the party] hopes to uncover, and why [the party] has not previously discovered the information." *Clifford v. Church Mut. Ins. Co.*, No. 2:13-CV-853, 2014 WL 5529664, at *2 (S.D. Ohio Nov. 3, 2014) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). Factors for a court to consider when deciding on a Rule 56(d) motion include: "(1) when the [party seeking discovery] learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would ... change[ ] the ruling ...; (3) how long the discovery period has lasted; (4) whether the [party seeking discovery] was dilatory in its discovery efforts; and (5) whether the [party moving for summary judgment] was responsive to discovery requests. *Cressend v. Waugh*, No. 2:09-CV-01060, 2011 WL 883059, at *2 (S.D. Ohio Mar. 11, 2011) (citing *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)). Nonetheless, "[i]f the [party seeking relief under Rule 56(d) has not 'receive[d] a full opportunity to conduct discovery,' denial of that party's Rule 56(d) motion and

14

ruling on a summary judgment motion would likely constitute an abuse of discretion." *Id*. (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)).

Here, Defendants filed for summary judgment on June 20, 2024 and the discovery cutoff was set for September 30, 2024. (ECF No. 55). Plaintiff has provided a declaration and indicates not having the opportunity to depose Defendants. (ECF No. 55-1). Plaintiff identified the need to complete depositions in order to understand the overlapping customers with respect to any post-Settlement Agreement conduct. (ECF No. 55 at 10). Plaintiff alleges that this information is needed through deposition because these customers have been "repeatedly concealed" by Defendants. (ECF No. 55-1 ¶ 7, 8). Plaintiff claims this concealment is evidenced by Defendants only disclosing their conduct towards Save-A-Lot while denying any other diverted customers, and Defendants blaming each other for not providing relevant documents. (*Id*.).

While it is unclear why the depositions of Alliance Defendants have not yet taken place, this Court notes Plaintiff nonetheless had not been dilatory in their efforts before this Motion for Summary Judgment. As Alliance Defendants pointed out, Plaintiff conducted discovery with other defendants, including interviews and depositions of other parties and former parties. (ECF No. 61 at 7). To the extent certain information that would change this ruling has been "repeatedly concealed," this Court finds it prudent to ensure Plaintiff received a full opportunity to conduct discovery. *See Ball*, 385 F.3d at 719.

As such, Plaintiff's Rule 56(d) Request is **GRANTED** and this Court's decision on Summary Judgment with respect to post-June 14, 2023 (post-Settlement Agreement) conduct is **STAYED**. Plaintiff has until May 2, 2025, to conduct the depositions and provide a brief in opposition to Alliance Defendants' Motion for Summary Judgment on post-June 14, 2023, conduct.

## IV. CONCLUSION

Accordingly, Alliance Defendants' Motion for Summary Judgment (ECF No. 49) is **DENIED**. Defendants' Motion to Strike (ECF No. 57) is **DENIED** and Motion for Extension of Time and For Leave to File Instanter is **GRANTED.** (ECF No. 59). Plaintiff has until May 2, 2025, to conduct the requested depositions and provide a brief in opposition to Alliance Defendants' Motion for Summary Judgment solely on the issue of post-June 14, 2023, conduct. Defendants' may file a response by no later than May 16, 2025.

**IT IS SO ORDERED.**

                                                 **ALGENON L. MARBLEY**
                                                 **UNITED STATES DISTRICT COURT JUDGE**

**DATED: March 19, 2025**